UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Spirochaete Research Labs LLC<br>Plaintiff,<br><br>v.<br><br>Alyvia LLC and<br>Meiyu Yu,<br>Defendants. | No. 2:25-cv-05021<br><br>**AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

---

## AMENDED COMPLAINT

Plaintiff Spirochaete Research Labs LLC, by and through undersigned attorneys, file this Amended Complaint against Defendants Alyvia LLC and Meiyu Yu, and asserts:

## NATURE OF THE ACTION

1. Defendants sell the product AAwipes Lead Test Swabs (30 Rapid Testing Swabs) ("Defendants' Swabs" or "AA Wipes"), advertised to detect lead in paint in houses, for safety reasons. Defendants misrepresent that Defendants' Swabs contain chemical sodium rhodizonate but Defendants' Swabs do not contain sodium rhodizonate. Sodium rhodizonate is established as a chemical that reliably detects lead in paint.

2. Instead of using sodium rhodizonate as the active chemical as advertised, Defendants' Swabs contain the active chemical Xylenol orange. Defendants' Swabs using Xylenol orange as the active ingredient often fail to differentiate between lead and other metals, leading to an indication that lead is present when it is not.

3. Plaintiff is a preexisting competitor of Defendants. Plaintiff in the trademarked product, SCITUS KNOW, UNDERSTAND, provides swabs used to detect lead in houses ("Plaintiff's Swabs"). Plaintiff's Swabs have sodium rhodizonate and consistently detect lead that is present; and do not indicate that lead is present when lead is not present.

4. In this Complaint Plaintiff makes claims under (a) the Lanham Act for false advertising, (b) the Lanham Act for infringement of trade dress; and (c) New York state law for deceptive acts and practices and false advertising. Defendants' conduct poses a threat to the health and safety of the general public, including consumers within this District. People think Defendants' Swabs are dependable and use sodium rhodizonate to detect lead when that is false. Those using Defendants' Swabs are putting themselves and their children at risk of lead poisoning.

5. Defendants caused Plaintiff damages of lost revenue and profits. If Defendants labelled the product correctly, advertised correctly and did not make misrepresentations, Plaintiff's sales and profits would have been higher. Many of Defendants' sales of the Defendants' Swabs would have gone to Plaintiff selling Plaintiff's Swabs .

## THE PARTIES

6. Plaintiff Spirochaete Research Labs, LLC is a New York limited liability corporation with its principal office at 9 Technology Drive, East Setauket, New York 11733.

7. Defendant Alyvia LLC is a Michigan limited liability company with its principal office at 3036 Appleridge Dr, Ann Arbor, MI 48103.

8. Defendant Meiyu Yu is an individual residing at 3036 Appleridge Dr, Ann Arbor, MI 48103. She is the owner, operator, and registered agent of Alyvia LLC.

## JURISDICTION AND VENUE

9. The claims for false advertising and trade dress infringement asserted in Counts I - II arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original and subject-matter jurisdiction over Counts I –II pursuant to 28 U.S.C. 1331 and 15 U.S.C § 1121(a).

10. The claims for deceptive acts and practices and false advertising asserted in Counts III-

IV arise under New York state law, and are so related to the federal claims asserted in Counts I-II, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts III- IV pursuant to 28 U.S.C. §§1338 (b) and 1367.

11. Defendants have purposefully availed themselves of the privilege of transacting business in this District and this action is based upon Defendants' commercial activities carried on in this District. Defendants have sold Defendants' Swabs to residents in this District.

12. Defendants' false advertising and deceptive acts and practices were directed to residents in this District. Defendants in this District have infringed on Plaintiff's trade dress.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Defendants transact substantial business here and Defendants are subject to personal jurisdiction in this district.

## FACTS

14. Plaintiff has manufactured, marketed, and sold lead detection swabs ("Plaintiff 's Swabs") under the Scitus brand since 2019, using the trademark "SCITUS KNOW, UNDERSTAND," which is registered as a federal trademark.

15. Defendant Alyvia LLC sells Defendants' Swabs in direct competition with Plaintiff.

16. Plaintiff's Swabs contain sodium rhodizonate, a well-established chemical for use in lead detection. When Plaintiff's Swab is dipped in vinegar the swab becomes capable of detecting lead and distinguishing between paint containing lead carbonate and paint containing zinc oxide.

17. Defendants' Swabs do not contain sodium rhodizonate. On the container holding Defendants' Swabs for sale, however, Defendants misrepresent that Defendants' Swabs contain sodium rhodizonate. Attached as Exhibit A is picture of Defendants' label for Defendants' Swabs. The misrepresentation and false advertisement that Defendants' Swabs contain sodium

rhodizonate can be seen in Exhibit A. Attached as Exhibit F is a picture of Plaintiff's label which accurately shows that Plaintiff's Swabs include sodium rhodizonate.

18. Defendants on Amazon falsely advertise that Defendants' Swabs contain sodium Rhodizonate and may be activated with water. A copy from Defendants' Amazon page https://a.co/d/fAfyGT7 on 09/01/2025, showing that advertisement, is attached as Exhibit B.

19. Defendants on their website falsely advertise that Defendants' Swabs contain sodium rhodizonate. A copy from Defendants' Website dated 08/15/2025, showing that advertisement, is attached as Exhibit C.

20. Defendants also falsely advertise their lead test kits work without limitation on multiple surfaces, including Toys, Wood, Paint, Dishes and Ceramics, and Soil, without any disclamation as to the effectiveness of the test swabs on these substrates. A copy from AA Wipe's Amazon listing https://a.co/d/buXf03g, showing that advertisement, is attached as Exhibit D.

21. Upon information and belief, Defendants also falsely advertise on other media and/or publications that Defendants' Swabs contain sodium rhodizonate.

22. Upon information and belief, Shenzhen Hongyi Bio-Tech Co., Ltd. operating in China is the manufacturer of Defendants' Swabs. Duke Sun, on behalf of Shenzhen Hongyi Bio-Tech Co., Ltd. told Eric Ritter, owner and operator of Plaintiff that Defendants' Swabs (made by Shenzhen Hongyi Bio-Tech Co., Ltd.) do not contain sodium rhodizonate or any functionally equivalent reagent. Instead, the actual active chemical is Xylenol orange, contradicting Defendants' advertising and representations. *See* Exhibit E, an exchange of emails between Mr. Ritter and Mr. Sun, including list of ingredients provided by Mr. Sun on the last page.

23. Plaintiff tested Defendants' Swabs using characteristic spectral testing. and found a positive UV identification of Defendants' true active ingredient -xylenol orange. Plaintiff's testing also shows that Defendants' Swabs do not contain sodium rhodizonate. Upon addition of

4

water and exposure to zinc, Defendants' Swabs turn purple and that establishes that the Swabs do not contain sodium rhodizonate.

24. Defendants import the Defendants' Swabs from China and introduce them into interstate commerce in the United States, selling them widely on Amazon and similar platforms, and upon information and belief, without conducting adequate verification of their contents or regulatory compliance.

25. Defendants' advertisements fail to provide any disclaimers regarding the material limitations of Defendants' Swabs, including the likelihood of false positives and the risk of cross-reactivity with non-lead metal oxides commonly found in household paints. This omission misleads consumers into believing the test is broadly reliable, when in fact it is prone to inaccuracies. Defendants do not disclose that information to consumers.

26. Defendants' misrepresentations and omissions have caused substantial confusion in the market.

27. Defendants' conduct has resulted in direct financial harm to Plaintiff, including lost sales, reputation damage, erosion of consumer trust in its category of tests, and substantial business relationships being impaired or lost.

**FIRST CLAIM FOR RELIEF**
(*False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)*)

28. Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 – 27 of the Complaint as though set forth fully herein.

29. This count is a claim for false and deceptive advertising under 15 U.S.C. §1125(a)(1)(B).

30. Defendants in commercial advertising and promotion, misrepresented the nature,

5

characteristics and qualities of Defendants' Swabs by stating that the Defendants' Swabs contain the active ingredient chemical sodium rhodizonate. Defendants' Swabs do not contain sodium rhodizonate.

31. Actual deception occurred to people in the market, including those in New York. Defendants' statements deceive a substantial portion of the intended audience.

32. The Defendants' deception is material. The false, misleading, and deceptive statements about sodium rhodizonate by Defendants were and are material to customer's purchasing decisions and are likely to continue to influence purchasing decisions.

33. The Defendants' kits contain Defendants' Swabs and travel in interstate commerce. The Defendants' statements in packaging and advertising Defendants' Swabs provide false information that the Swabs are reliable, accurate and more convenient than Plaintiff's product. Defendants indicate their product is more convenient because Defendants' Swabs do not require vinegar to be activated, only water. Any value to less time to test because of use of just water is wiped out because the test results are not reliable.

34. Defendants' statements on Defendants' website and on Amazon page constitute commercial advertising and commercial promotion.

35. Defendants mislabeling, misrepresenting and false advertisement that the Defendants' Swabs contain sodium rhodizonate caused confusion upon consumers and caused Plaintiff damages of lost sales and profits and damage to Plaintiff's reputation and goodwill. It is likely those injuries to the Plaintiff will continue in the future.

### (a) Testing and Test Results

36. Eric Ritter is founder and operator of Plaintiff. Since 2019, Mr. Ritter has conducted

extensive comparative testing of lead-detection reagents, including **sodium rhodizonate** and **azo dye–based indicators** such as **xylenol orange**. Mr. Ritter has over a decade of experience in applied analytical chemistry, product formulation, and field testing of colorimetric lead assays.

37. Mr. Ritter's education and professional experience qualify him to perform and interpret the comparative tests described herein. Attached is Exhibit J is Affirmation and Report of Mr. Ritter on this case and it provides the steps of the tests and the results.

38. Defendants advertise and label their "AA Wipes" lead-detection swabs as containing **sodium rhodizonate**. In truth, the AA Wipes do **not** contain sodium rhodizonate. This conclusion is supported by controlled laboratory comparison tests that Mr. Ritter personally performed.

39. Mr. Ritter obtained certified reference standards of:

- **Sodium rhodizonate**, Spectrum Chemical Mfg. Corp., *Lot No. 1OA214*; and
- **Xylenol orange**, Sigma-Aldrich Co., *Product Code 1003819468, Source SHBS4926.*

40. Under identical **365-nm ultraviolet conditions**, sodium rhodizonate appeared **dull red-brown/gray** and exhibited **no fluorescence**, whereas xylenol orange emitted a **bright orange fluorescence**.

41. The **AA Wipes swab tips** displayed the same bright orange fluorescence as xylenol orange and none of the non-fluorescent behavior characteristic of sodium rhodizonate. Mr. Ritter repeated these tests **five times** under identical conditions, each yielding the same results. The consistent match to xylenol orange and complete absence of sodium-rhodizonate fluorescence characteristics demonstrate that Defendants' labeling that AA Wipes contains sodium rhodizonate is **literally false**.

42. Mr. Ritter also conducted **acid–base color-change tests** on all samples, acidifying with household vinegar (acetic acid) and basifying with dilute sodium hydroxide (NaOH) in distilled water as follows:

7

- **Sodium rhodizonate** changed from its initial **gray** to a **mustard color when wetted** and remained that mustard color under both **acidic and basic conditions**, showing **no violet transition**.
- **Xylenol orange**—and the **AA Wipes swabs**—appeared **orange under acidic or neutral conditions** and turned **violet in alkaline conditions**, consistent with **pH-dependent azo dye chemistry**.

These results conclusively show that the AA Wipes contain **xylenol orange** (or a chemically similar pH indicator) and not sodium rhodizonate, which requires acidic conditions for metal complexation. The product is therefore mislabeled and chemically incompatible with its claimed function.

### (b) Defendants' After-the-fact Attempted Concealment of and Supplier's Confirmation that AA Wipes Do Not Contain Sodium Rhodizonate

43. After Plaintiff publicly raised concerns, Defendants **modified their listings** by cropping or obscuring the term "sodium rhodizonate" from product images and by affixing **stickers over that printed term** on bottles shipped thereafter. These concealments were first observed on **October 17, 2025** website purchase. Mr. Ritter's earlier purchases on April 24, 2024 (Amazon), July 3, 2025 (Amazon), and October 9, 2025 (website) displayed "sodium rhodizonate" clearly and without alteration.

44. Defendants' supplier subsequently **confirmed in writing** that the formulation used in AA Wipes **does not contain sodium rhodizonate and instead contains xylenol orange.**

### (c) Damages have been Suffered by Consumers in New York

45. Mr. Ritter, a resident and citizen of New York states personally purchased AA Wipes in the state of **New York** on four occasions:

- April 24, 2024 (Amazon);
- July 3, 2025 (Amazon);
- October 9, 2025 (Defendants 'website); and
- October 17, 2025 (Defendants 'website).

Each order shipped to **Setauket, New York**, and Mr. Ritter received the products in New

8

York and the products included and advertised the false statement that the product contained "sodium rhodizonate."

46. AA Wipes are marketed to the general public nationwide, including New York consumers, who reasonably rely on accurate chemical labeling to detect environmental lead hazards.

47. Misrepresenting a pH indicator as a lead-specific reagent can cause **serious public harm.** Consumers relying on AA Wipes 'false labeling risk **false negatives** (missing real lead hazards) or **false positives** (triggering unnecessary concern and expense), leading to **unsafe exposure**, **misdirected remediation**, and **extra costs** for both consumers and regulators.

48. Given the New York state market for lead detectors, upon information and belief, in addition to Plaintiff, other residents and citizens of New York have purchased AA Wipes and have been damaged by the representation that AA Wipes contain sodium rhodizonate. Those damaged residents and citizens use the AA Wipes swabs that do not live up to the performance of a product that contains sodium rhodizonate.

49. Based on Mr. Ritter's education, experience, and the controlled replicate testing described herein, Mr. Ritter affirms that AA Wipes do not contain sodium rhodizonate and Defendants' representations that AA Wipes contain sodium rhodizonate are **false and misleading**.

50. The AA Wipes swabs function as pH-sensitive azo dye tests, not as **lead-specific sodium rhodizonate reagents**. Defendants' labeling and concealment have caused competitive injury to Plaintiff, and caused Plaintiff damages of lost revenue and profits; and caused confusion and damages among other consumers.

**SECOND CLAIM FOR RELIEF**
(Infringement of Plaintiff's Trade Dress)

51. Plaintiff repeats and incorporates by reference the statements and allegations in

9

paragraphs 1 - 50 of the Amended Complaint as though set forth fully herein.

52. This count is a claim for Defendants' infringement of Plaintiff's trade dress in kits that includes Plaintiff's Swabs. Plaintiff is the owner of the trade dress of the kits based on its use of the kits.

53. The visual appearance of Plaintiff's trade dress distinguishes it and signifies to consumers that Plaintiff is the source of the kits. Plaintiff's trade dress provides an overall look and feel. Plaintiff's trade dress is distinctive so that consumers can readily identify Plaintiff as the source of Plaintiff's Swabs. A picture of Plaintiff's kits showing trade dress is attached as Exhibit G. A picture of Plaintiff's September 2, 2025 Amazon listing showing trade dress is attached as Exhibit I.

54. The Plaintiff's Swabs and Defendants' Swabs both are used for lead-detection and are in direct competition. The two Swabs use the same marketing channels.

55. Trade dress of Defendants' kits in packaging and instructions closely resembles trade dress of Plaintiff's kits, including a similar colored gradient bar and swab illustration. Defendants' use of their trade dress, which resembles Plaintiff's trade dress, constitutes false and deceptive advertising.

56. A picture of Defendants' kits with trade dress is attached as Exhibit H. The infringement is shown with a comparison to Plaintiff's kits attached as Exhibit G showing trade dress and Plaintiff's Amazon listing showing trade dress and attached as Exhibit I.

57. Defendants' use of similar trade dress is likely to cause confusion among consumers, leading them to mistakenly believe the products or services come from the same source.

58. Plaintiff's Brand trade dress consists of distinctive, non-functional elements, including:

- **Dual top-and-bottom gradient bars** on the front panel in an **orange-mustard to violet-purple gradient**;
- Prominent advertising text reading **"LEAD TEST SWABS"**; and

10

- A **swab illustration with a gradient-colored tip**, together with consistent centered typography and layout hierarchy.
- Packaging Inserts with the words "Knowing and Understanding" written in the top left of the page.

59. These design elements are non-functional and have been used continuously since 2019, developing **secondary meaning** among consumers as identifiers of Plaintiff's Brand.

60. Defendants 'AA Wipes packaging **copies these same elements**, including the orange-to-violet gradient framing, the "LEAD TEST SWABS", Knowing Understanding" phrases, and the gradient-tipped swab depiction, creating a **likelihood of consumer confusion** and **unfairly trading on Plaintiff's goodwill.**

61. Defendants' infringement has caused customer confusion and caused Plaintiff lost sales, lost revenues and lost profit.

62. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct.

## THIRD CLAIM FOR RELIEF
*(Deceptive Acts and Practices Under NEW YORK GENERAL BUSINESS LAW § 349)*

63. Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1-62 of the Amended Complaint as though set forth fully herein.

64. This Count is a claim for deceptive acts and practices under NEW YORK GENERAL BUSINESS LAW ("GBL") § 349.

65. Defendants' conduct poses a direct and/or proximate threat to the health and safety of the general public, including consumers within this District. People think Defendants' Swabs are dependable using sodium rhodizonate to detect lead (when it is not). Those people are putting themselves and their children at risk of lead poisoning. Defendants' acts and conduct go above and beyond ordinary false advertising. Defendants' acts and conduct constitute deceptive acts and practices in violation of GBL § 349.

66. Defendants' misrepresentation that Defendants' Swabs use the same active ingredient as Plaintiff's product has caused Plaintiff to lose sales and damage to reputation; and has caused Plaintiff damages of lost profit.

67. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct.

## FOURTH CLAIM FOR RELIEF

(*False Advertising Under NEW YORK GENERAL BUSINESS LAW § 350*)

68. Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 67 of the Amended Complaint as though set forth fully herein.

69. This Count is a claim for false advertising under GBL §350.

70. Defendant's acts and conduct constitute false advertising in violation of NEW YORK GENERAL BUSINESS LAW § 350.

71. By creating the false, misleading, and/or deceptive impression that Defendants' product had the same active ingredient as Plaintiff's product, Defendant has caused Plaintiff to lose sales and damage to reputation; and has caused Plaintiff damages of lost revenue and lost profit.

72. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff asks that this Court:

A. Enter an Order, finding in Plaintiff's favor on each asserted Claim for Relief.

B. Enter a Judgment in favor of Plaintiff and against Defendants in an amount in excess of $1,500,000.

C. Order Defendants to provide Plaintiff with a full accounting of all manufacture,

12

distribution, revenue, sales and profits derived from the sale of products labelled, advertised, or represented to contain sodium rhodizonate.

    D. Order Defendants to pay Plaintiff all of Defendant's profits derived from the sale of products labelled, advertised, or represented to contain sodium rhodizonate.

    E. Award Plaintiff treble actual damages.

    F. Find that Defendant's acts and conduct complained of herein render this case "exceptional."

    G. Award Plaintiff its costs and reasonable attorneys' fees incurred in this matter.

    H. Award Plaintiff pre-judgment and post-judgment interest against Defendants.

    I. Award Plaintiff such other relief that the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury for all issues so triable.

**SALMON RICCHEZZA SINGER & TURCHI LLP**

BY: */s/WMMullineaux*
William Mark Mullineaux, Esquire
110 East 59th Street, 22nd Floor
New York. NY 10022
Tel: 610-291-3850 (cell)
Email: mmullineaux@srstlaw.com
Attorneys for Plaintiff

13

## **CERTIFICATE OF SERVICE**

 I, William Mark Mullineaux certify that on November 3, 2025, I filed the foregoing Amended Complaint with the Court and that resulted in service to Defendants' counsel of the Amended Complaint via CM/ECF.

Salmon Ricchezza Singer & Turchi, LLP
By: */s/WMMullineaux*
William Mark Mullineaux
